## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARLA BUSH, KIMBERLY DEHAVEN, NANCY MUNIE, and MONIQUE SALERNO, individually and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> WELLPET, LLC; and DOES 1 through 20, <br><br> Defendant. | Case No. 1:21-cv-10059-RGS <br><br><br> **[PROPOSED] FIRST AMENDED CLASS ACTION COMPLAINT** <br><br> <u>**JURY TRIAL DEMANDED**</u> <br><br> **The Honorable Richard G. Stearns** |

Plaintiffs Marla Bush, Kimberly DeHaven, Nancy Munie, and Monique Salerno (collectively, "Plaintiffs") bring this action on behalf of themselves and all others similarly situated ("Class Members") against Defendant WellPet, LLC ("WellPet" or "Defendant"). Plaintiffs make the following allegations pursuant to the investigation of their counsel and based upon information and belief, except as to the allegations specifically pertaining to themselves, which are based on personal knowledge.

## <u>NATURE OF THE ACTION</u>

1.     This is a putative class action lawsuit regarding Defendant's false and misleading labeling and marketing of its cat and dog food products in the: (a) "Complete Health" line and (b) "Core" line (collectively the "Mislabeled Pet Foods").[1] The labeling and packaging of the Mislabeled Pet Foods contain numerous false and misleading grain-free claims ("Grain-Free Claims"). Defendant labels its pet foods as "grain free" and claims that their Mislabeled Pet

---

[1] The Mislabeled Pet Foods include all cat and dog kibble varieties of the grain-free recipes in each line.

Foods contain "no wheat, corn or soy." This misleads consumers into believing that the Mislabeled Pet Foods contain no grain even though the Mislabeled Pet Foods in fact do contain gluten (*i.e.* grain). By doing so, Defendant is able to charge a substantial price premium for its Mislabeled Pet Foods on account of these false Grain-Free Claims.

2.     As WellPet concedes, "grain free pet foods are becoming increasingly more popular"[2] and that "grain-free and limited ingredient diets [are the] go-to choice for pet parents."[3]

3.     Scientific testing reveals that contrary to the "grain free" promise, the Mislabeled Pet Foods do, in fact, contain grain. In short, the Mislabeled Pet Foods' labels and marketing are false and misleading.

4.     Plaintiffs seek relief in this action individually, and as a class action on behalf of similarly situated purchasers of Defendant's products, for: (i) breach of express warranty; (ii) breach of the implied warranty of merchantability; (iii) unjust enrichment; (iv) violation of New York's General Business Law ("GBL") § 349; (v) violation of New York's GBL § 350; (vi) violation of California's Consumer Legal Remedies Act ("CLRA"), Cal. Civil Code §§ 1750, *et seq.*; (vii) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200, *et seq.*; (viii) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500, *et seq.*; (ix) violation of Massachusetts General Law Chapter 93A.; (x) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, *et seq.*; (xi) negligent misrepresentation; and (xii) violation of State Consumer Fraud Acts.

---

[2] https://www.wellnesspetfood.com/our-community/wellness-blog/going-grain-free-your-dog [https://perma.cc/A2BD-Q39V ] (Last accessed Jan. 7, 2020).

[3] https://www.wellnesspetfood.com/our-community/wellness-blog/recognizing-and-treating-food-allergies-sensitivities-dogs [https://perma.cc/925K-HM5G] (Last accessed Jan. 7, 2020).

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction pursuant to 28 U.S.C § 1332(d)(2)(a) because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiffs, as well as most members of the proposed class, are citizens of states different from Defendant.

6.     This Court has personal jurisdiction over Defendant because it has continuous and systematic contacts with the State of Massachusetts as to essentially render them "at home" in this State and Defendant's principal place of business is located in this State.  Moreover, Defendant has purposefully availed itself of the laws and benefits of doing business in this State, and Plaintiffs' claims arise out of the Defendant's forum-related activities.  Furthermore, a substantial portion of the events giving rise to Plaintiffs' claims occurred in this State, including Plaintiff Munie's purchase of the Mislabeled Pet Foods.

7.     Venue is proper in this District under 28 U.S.C. § 1391 because Defendant is headquartered in this District.

## PARTIES

8.     Plaintiff Kimberly DeHaven is a citizen of California, residing in Chula Vista, California.  On October 15, 2019, Plaintiff DeHaven purchased Wellness Complete Health cat food for her cats Storm and Samantha.  Prior to her purchase of Wellness Complete Health pet food Plaintiff DeHaven reviewed the product's labeling and packaging and saw that the pet food was purportedly grain-free.  Plaintiff DeHaven relied on that labeling and packaging to choose her pet food over comparable recipes.  Plaintiff DeHaven saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Wellness

pet food was grain-free.  Plaintiff DeHaven relied on these representations and warranties in deciding to purchase her Wellness pet food.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Wellness pet food on the same terms had she known these representations were not true.  However, Plaintiff DeHaven remains interested in purchasing a grain-free pet food and would consider Wellness in the future if Defendant removed any grain.  In making her purchase, Plaintiff DeHaven paid a substantial price premium due to the false and misleading Grain-Free Claims.  However, Plaintiff DeHaven did not receive the benefit of her bargain because her Wellness pet food, in fact, was not grain-free.  Plaintiff DeHaven also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant.  Plaintiff DeHaven further understood that the purchase came with Defendant's representation and warranties that her Wellness pet food was grain-free.

9.      Plaintiff Marla Bush is a citizen of California, residing in Van Nuys, California.  On October 1, 2019, Plaintiff Bush purchased Wellness Core pet food for her dogs Jackson and Angel. Prior to her purchase of Wellness Core pet food, Plaintiff Bush reviewed the product's labeling and packaging and saw that the pet food was purportedly grain-free.  Plaintiff Bush relied on that labeling and packaging to choose her pet food over comparable recipes.  Plaintiff Bush saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Wellness pet food was grain-free.  Plaintiff Bush  relied on these representations and warranties in deciding to purchase her Wellness pet food.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Wellness pet food on the same terms had she known these representations were not true.  However, Plaintiff Bush remains interested in purchasing a grain-

free pet food and would consider Wellness in the future if Defendant removed any grain.  In making her purchase, Plaintiff Bush paid a substantial price premium due to the false and misleading Grain-Free Claims.  However, Plaintiff Bush did not receive the benefit of her bargain, because her Wellness pet food, in fact was not grain-free.  Plaintiff Bush also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant.  Plaintiff Bush further understood that the purchase came with Defendant's representation and warranties that her Wellness pet food was grain-free.

10.     Plaintiff Nancy Munie is a citizen of Massachusetts, residing in East Bridgewater, Massachusetts.  In October 2019, Plaintiff Munie purchased Wellness Complete Health Indoor Salmon and Herring recipe pet food for her cat Rory.  Prior to her purchase of Wellness pet food Plaintiff Munie reviewed the product's labeling and packaging and saw that the pet food was purportedly grain-free.  Plaintiff Munie relied on that labeling and packaging to choose her pet food over comparable recipes.  Plaintiff Munie saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Wellness pet food was grain-free.  Plaintiff Munie relied on these representations and warranties in deciding to purchase her Wellness pet food.  Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Wellness pet food on the same terms had she known these representations were not true.  However, Plaintiff Munie may purchase the Mislabeled Pet Foods in the future under the reasonable belief that the Grain-Free Claims have been corrected.  In making her purchase, Plaintiff Munie paid a substantial price premium due to the false and misleading Grain-Free Claims.  However, Plaintiff Munie did not receive the benefit of her bargain, because her Wellness pet food, in fact was not grain-free.

Plaintiff Munie also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant.  Plaintiff Munie further understood that the purchase came with Defendant's representation and warranties that her Wellness pet food was grain-free.

11.     Plaintiff Monique Salerno is a citizen of New York, residing in Flushing, New York.  In January 2020, Plaintiff Salerno purchased Wellness Core pet food for her dog Luca. Prior to her purchase of Wellness pet food, Plaintiff Salerno reviewed the product's labeling and packaging and saw that the pet food was purportedly grain-free.  Plaintiff Salerno relied on that labeling and packaging to choose her pet food over comparable recipes.  Plaintiff Salerno saw these representations prior to, and at the time of purchase, and understood them as representations and warranties that her Wellness pet food was grain-free.  Plaintiff Salerno relied on these representations and warranties in deciding to purchase her Wellness pet food. Accordingly, these representations and warranties were part of the basis of the bargain, in that she would not have purchased her Wellness pet food on the same terms had she known these representations were not true.  However, Plaintiff Salerno may purchase the Mislabeled Pet Foods in the future under the reasonable belief that the Grain-Free Claims have been corrected. In making her purchase, Plaintiff Salerno paid a substantial price premium due to the false and misleading Grain-Free Claims.  However, Plaintiff Salerno did not receive the benefit of her bargain, because her Wellness pet food, in fact was not grain-free.  Plaintiff Salerno also understood that in making the sale, her retailer was acting with the knowledge and approval of the Defendant and/or as the agent of the Defendant.  Plaintiff Salerno further understood that the purchase came with Defendant's representation and warranties that her Wellness pet food was grain-free.

12.     Defendant WellPet, LLC is a Massachusetts corporation, with its principal place of business at 200 Ames Pond Dr., Tewksbury, MA 01876.  WellPet manufactures, sells, and/or distributes Wellness-brand products, and is responsible for the advertising, marketing, trade dress, and packaging of Wellness pet foods, including the Mislabeled Pet Foods at issue in this matter.  Wellness manufactured, marketed, and/or sold the Mislabeled Pet Foods during the class period.  The planning and execution of the advertising, marketing, labeling, packaging, testing, and/or corporate operations concerning the Mislabeled Pet Foods and the Grain-Free Claims was primarily carried out at WellPet's headquarters and facilities within Massachusetts.  The policies, practices, acts and omissions giving rise to this Action were developed in, and emanated from, WellPet's headquarters in Tewksbury, Massachusetts.

## FACTS COMMON TO ALL CAUSES OF ACTION

### A.     Grain-Free Products

13.     The Association of American Feed Control Officials ("AAFCO"), the body that creates model regulations for pet food labels, considers barley, wheat, corn, grain sorghum, mixed feed oats, oats, triticale, brown rice, rough rice, broken or chipped rice, brewers rice, and rye to be grain products.[4]

14.     A grain-free product, as implied by the name, does not contain grain.  The FDA defines gluten as "the proteins that naturally occur in a gluten-containing **grain**."[5]  Thus, gluten can be found in grain, such as wheat, barley, and rye.   Gluten is typically found where there is a gluten-containing grain-ingredient, or a product that contains a gluten containing grain that is not

---

[4] 22.3. Grain Products, Association of American Feed Control, 2019 Official Publication at 360.
[5] 21 CFR 101.91 (a)(2) (emphasis added).

processed to remove gluten (*e.g.* wheat flour).[6]  As such, a grain-free pet food will always be gluten-free.

15.     Recently, consumers have been seeking out gluten free (or grain-free) diets for themselves with the understanding that it will improve their health because such products contain fewer carbohydrates and are more easily digestible.  As a result, consumers believe that their pets will benefit from similar dietary changes.  To meet this market demand, pet food manufactures developed grain-free pet food to provide products that accommodate consumers looking for gluten – and therefore grain – free alternatives for their pets.

16.     Now, following human dietary trends, grain-free pet foods are desired by consumers who believe that dogs and cats require pet foods that contain more protein and animal fats and fewer carbohydrates than grain-based pet foods.  As a result, grain-free pet foods are considered easily digestible and more similar to pets' natural diets.

17.     Thus, reasonable consumers understand that "grain-free" pet food means the pet food will be gluten free because gluten is a grain by-product.  As such, consumers expect that their grain-free pet food will be gluten-free.

18.     Although not every pet requires a grain-free diet, consumers such as Plaintiffs and Class Members choose to pay premium prices for quality foods to invest in their pets' health.

19.     Accordingly, Plaintiffs and consumers willingly pay a premium for grain-free pet foods, such as Defendant's.

---

[6] 21 CFR 101.91(a)(3)(A)

B.      **Defendant's Grain-Free Misrepresentations**

20.      Defendant recognizes that the grain-free representation is important because "natural, grain-free and limited-ingredient diets have become a go-to choice for pet parents who believe their dog has a food allergy or sensitivity."[7]

21.      Defendant promises that its Mislabeled Pet Foods are "100% grain-free:"



22.      Defendant further claims that its Mislabeled Pet Foods contain "No: Wheat, Corn, or Soy."

23.      Online, Defendant represents that "[e]ach grain free, nutrient-rich formula provides high quality protein for your dog with no meat by-products or fillers, **grain, corn, soy, wheat-gluten** or artificial preservatives, colors or flavors[:]"

> Please note that the product information displayed is provided by manufacturers, suppliers and other third parties and is not independently verified by Petco. **Full disclaimer here.**
>
> Wellness CORE Natural Grain Free Dry Dog Food Original Turkey & Chicken Recipe is healthy, 100% natural grain free dog food for adult dogs made with turkey, chicken, salmon oil and fruits and vegetables to help support your dog's optimal health and fortified with antioxidents, probiotics, vitamins and minerals, including fish and flax omega blend for healthy skin and coat. Wellness CORE grain free dog food formulas are based on the nutritional philosophy that dogs thrive on a diet mainly comprised of meat. Each grain free, nutrient-rich formula provides high quality protein for your dog with no meat by-products or fillers, grain, corn, soy, wheat-gluten or artificial preservatives, colors or flavors.

24.      Similarly, Defendant promises its products contain "NO Wheat-Gluten":

---

[7] https://www.wellnesspetfood.com/our-community/wellness-blog/recognizing-and-treating-food-allergies-sensitivities-dogs [https://perma.cc/925K-HM5G] (Last accessed November 26, 2019).



25.     Moreover, Defendant's Mislabeled Pet Foods are categorized as being "grain-free" and "gluten free" on major retailer's websites:



26.     Each bag of the Mislabeled Pet Food contains the claim that is "Grain Free" on its packaging.

27.     This claim can be found on Defendant's Core pet foods:



The back of the bags again confirm the pet foods contain no "wheat" or "wheat-gluten:"



It is also prominently featured on Defendant's Complete Health pet foods:



**C.   Defendant's Pet Food Contains Gluten**

28.    However, Defendant's Grain-Free Claims are false and misleading.

29.    The presence of 20 parts per million (ppm) or more of gluten indicates that a product contains significant amounts of gluten, such that, were it a human food product, it would be misbranded.[8]

30.    Defendant represents that the Mislabeled Pet Foods are "grain free" and therefore contain "no corn, grain, or soy."  However, independent testing has revealed that the Mislabeled Pet Foods do in fact contain gluten (*i.e.* grain.  Plaintiffs' counsel commissioned an independent laboratory to perform testing of Defendant's products, which show that the Mislabeled Pet Foods contain gluten – a direct contradiction to the warranties that the pet foods do not contain grains.

---

[8] *See* 21 CFR 101.91.

Specifically, Defendant's Mislabeled Pet Foods contained 520 ppm and 290 ppm gluten content. If this were a human product, the amount of gluten at issue would render it misbranded because the gluten content of the Mislabeled Pet foods is more than **26** and **14.5** times the permissible limit for gluten-free foods.

31.     By marketing the Mislabeled Pet Foods as grain-free, Defendant knew that the Grain-Free Claims are false and misleading, yet still advertised, labeled, and packaged the Mislabeled Pet Foods with the false and misleading Grain-Free Claims.

32.     Simply put, Defendant's Grain-Free Claims are false.  The content descriptions of the Mislabeled Pet Foods that Defendant advertised on product labels misrepresented the true grain content of the Mislabeled Pet Foods.

### D.     Defendant Maintains Strict Quality Standards

33.     In an October 25, 2012 video, Defendant claimed its biggest priority is "making the highest quality natural pet food possible."  As part of this, Defendant brought most of its manufacturing to its own facility in 2012 "to directly control the stringent manufacturing standards and rigorous testing procedures that ensure the quality of [its] food."  Defendant even maintains "a state-of the art on-site quality and safety laboratory" where it tests "both [its] ingredients and [its] finished products."  At this lab, "ingredients and products are tested throughout the entire manufacturing process to ensure that nutrition and safety are never compromised."  Further, Defendant tests its products "before the ingredients are processed, during processing, after production, and before the product leaves the plant." [9]

---

[9] https://www.youtube.com/watch?v=ua_qIEQx430&feature=youtu.be (last accessed December 2, 2019).

34.    Defendant also includes its "Wellness Way" promise on every bag of pet food:



35.    As part of the "Wellness Way," Defendant maintains "an extensive quality assurance program, guaranteeing that [its] products are safe and balanced."[10]

36.    Further, Defendant "employs rigid manufacturing procedures and other protocols … [and] throughout, the entire manufacturing process is carefully handled."[11]

37.    In fact, its "ingredient selection process is rigid, uncompromising and detailed. … [because Defendant] believe[s] in food you can trust.[12]

## CLASS ALLEGATIONS

38.    Plaintiffs bring this action on their own behalf, and as representatives of all similarly situated individuals pursuant to Fed. R. Civ. P. 23 and the below-defined Classes of consumers who purchased a Wellness brand pet food with a Grain-Free Claim:

> **Nationwide Class:**  All persons in the United States that purchased the Mislabeled Pet Foods
>
> **Consumer Fraud Multi-State Subclass:**  All persons in the states of California, Florida, Illinois, Massachusetts, Michigan, Minnesota, Missouri, New Jersey, New York, and Washington that purchased the Mislabeled Pet Foods.[13]

---

[10] https://www.wellnesspetfood.com/our-philosophy/our-standards-our-promise [https://perma.cc/3Q35-HS9M] (last accessed Jan. 7, 2020).

[11] *Id.*

[12] *Id.*

[13] The states in the Consumer Fraud Multi-State Class are limited to those states with similar consumer fraud laws under the facts of this case: California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. *505/1, et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §407.010,

39.     Excluded from the Class are persons who made such purchase for the purpose of resale.  Also excluded are Defendant and its affiliates, parents, subsidiaries, employees, officers, agents, and directors as well as any judicial officers presiding over this matter and the members of their immediate families and judicial staff.

40.     Plaintiffs Bush and DeHaven also seek to represent a subclass of all Class Members who purchased the Mislabeled Pet Foods in California (the "California Subclass").

41.     Plaintiff Munie also seeks to represent a subclass of all Class Members who purchased the Mislabeled Pet Foods in Massachusetts (the "Massachusetts Subclass").

42.     Plaintiff Salerno also seeks to represent a subclass of all Class Members who purchased the Mislabeled Pet Foods in New York (the "New York Subclass").

43.     Members of the Class, Consumer Fraud Multi-State Subclass,  California Subclass, Massachusetts Subclass, and New York Subclass are so numerous that their individual joinder herein is impracticable.  On information and belief, members of the Class, Consumer-Fraud Multi-State Subclass, California Subclass, Massachusetts Subclass, and New York Subclass number in the tens or hundreds of thousands.  The precise number of Class Members and their identities are unknown to Plaintiffs at this time but may be determined through discovery.  Class Members may be notified of the pendency of this action by mail and/or publication through the distribution records of Defendant and third-party retailers and vendors.

44.     Common questions of law and fact exist as to all Class Members and predominate over questions affecting only individual Class Members.  Common legal and factual questions include but are not limited to: whether the Grain-Free Claims are false or misleading; whether Defendant warranted the Grain-Free Claims on the packaging and labeling; whether Defendant

_et seq._); New Jersey (N.J. Stat. § 56:8-1, _et seq._); New York (N.Y. Gen. Bus. Law §§ 349, 350 _et seq._); and Washington (Wash. Rev. Code § 19.86.010, _et seq._).

breached these warranties; and whether Defendant committed statutory and common law fraud by doing so.

45.    Plaintiffs' claims are typical of the claims of the Class, Consumer Fraud Multi-State Subclass, California Subclass, Massachusetts Subclass, and New York Subclass in that they purchased the Mislabeled Pet Foods in reliance on the representations and warranties described above and suffered a loss as result of those purchases.

46.    Plaintiffs are adequate representatives of the Class, Consumer Fraud Multi-State Subclass, California Subclass, Massachusetts Subclass, and New York Subclass because their interests do not conflict with the interests of the Class Members they seek to represent, they have retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of Class Members will be fairly and adequately protected by Plaintiffs and their counsel.

47.    The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of the Class, Consumer Fraud Multi-State Subclass, California Subclass, Massachusetts Subclass, and New York Subclass Members.  Each individual Class Member may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendant's liability.  Individualized litigation increases the delay and expense to all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of this case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of

Defendant's liability.  Class treatment of the liability issues will ensure that all claims and claimants are before this Court for consistent adjudication of the liability issues.

## <u>COUNT I</u>
**(Breach Of Express Warranty)**

48.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

49.     Plaintiffs DeHaven, Bush and Salerno bring this claim individually and on behalf of the members of the proposed California and New York Subclasses against Defendant.

50.     As the designer, manufacturer, marketer, distributor, and/or seller, Defendant expressly warranted in the Grain-Free Claims that the Mislabeled Pet Foods were grain-free.

51.     In fact, the Mislabeled Pet Foods are not grain-free.

52.     As a direct and proximate cause of Defendant's breach of express warranty, Plaintiffs DeHaven, Bush and Salerno and the members of the California and New York Subclasses have been injured and harmed because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if they knew that the Grain-Free Claims were not true; (b) they paid a price premium for the Mislabeled Pet Foods due to the Grain-Free Claims; and (c) the Mislabeled Pet Foods do not have the characteristics, uses, benefits, or quantities as promised in that they are not grain-free.

53.     On or about December 20, 2019, prior to filing this action, a pre-suit notice letter was served on Defendant which complies in all respects with U.C.C. § 2-607.  Plaintiffs sent Defendant a letter via certified mail, return receipt requested, advising Defendant that it breached numerous warranties and violated state consumer protection laws, and demanding that Defendant cease and desist from such violations and make full restitution by refunding the monies received therefrom.  A true and correct copy of Plaintiffs' letter is attached hereto as **<u>Exhibit A</u>**.

17

## COUNT II
### (Breach Of The Implied Warranty Of Merchantability)

54.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

55.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

56.     As the designer, manufacturer, marketer, distributor, and/or seller, Defendant affixed Grain-Free Claims to each Mislabeled Pet Food and impliedly warranted that the Mislabeled Pet Foods were grain-free.

57.     Defendant breached the warranty implied in the contract for the sale of the Mislabeled Pet Foods because they could not pass without objection in the trade under the contract description, the goods were not of fair average quality within the description, and the goods were unfit for their intended and ordinary purpose because the Mislabeled Pet Foods are not grain-free as advertised.  As a result, Plaintiffs and Class Members did not receive the goods as impliedly warranted by Defendant to be merchantable.

58.     Plaintiffs and Class Members purchased the Mislabeled Pet Foods in reliance upon Defendant's skill and judgment and the implied warranties.

59.     The Mislabeled Pet Foods were not altered by Plaintiffs and Class Members.

60.     The Mislabeled Pet Foods were defective when they left the exclusive control of Defendant.

61.     Defendant knew that the Mislabeled Pet Foods would be purchased and used without additional testing by Plaintiffs and Class Members.

62.     The Mislabeled Pet Foods were defectively designed and unfit for their intended purpose, and Plaintiffs and Class Members did not receive the goods as warranted.

63.     Within a reasonable time after Plaintiffs knew or should have known that the product was not fit for such purpose and/or was not otherwise merchantable as described herein, Plaintiffs gave Defendant notice thereof.

64.     As a direct and proximate cause of Defendant's breach of the implied warranty, Plaintiffs and Class Members have been injured and harmed because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if they knew that the Grain-Free Claims were not true; (b) they paid a price premium for the Mislabeled Pet Foods due to the Grain-Free Claims; and (c) the Mislabeled Pet Foods do not have the characteristics, uses, benefits, or quantities as promised in that they are not grain-free.

## **COUNT III**
### **(Unjust Enrichment)**

65.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

66.     Plaintiffs bring this claim individually and on behalf of the members of the proposed Nationwide Class against Defendant.

67.     Plaintiffs and Class Members conferred benefits on Defendant by purchasing the Mislabeled Pet Foods.

68.     Defendant has been unjustly enriched in retaining the revenues derived from Plaintiffs and Class Members' purchases of the Mislabeled Pet Foods.  Retention of those monies under these circumstances is unjust and inequitable because Defendant misrepresented the grain content of the Mislabeled Pet Foods by claiming they were "grain free."  These misrepresentations caused injuries to Plaintiffs and Class Members because they would not have purchased the Mislabeled Pet Foods at all, or on the same terms, if the true facts were known.

69.     Because Defendant's retention of the non-gratuitous benefits conferred on it by Plaintiffs and Class Members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class Members for its unjust enrichment, as ordered by the Court.

<u>**COUNT IV**</u>
**(Violation of New York's General Business Law § 349)**

70.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

71.     Plaintiff Salerno brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

72.     New York's General Business Law § 349 prohibits deceptive acts or practices in the conduct of any business, trade, or commerce.

73.     In its sale of goods throughout the State of New York, Defendant conducts business and trade within the meaning and intendment of New York's General Business Law § 349.

74.     Plaintiff Salerno and members of the New York Subclass are consumers who purchased products from Defendant for their personal use.

75.     By the acts and conduct alleged herein, Defendant has engaged in deceptive, unfair, and misleading acts and practices, which include, without limitation, misrepresenting that the Mislabeled Pet Foods are grain-free as stated on its packaging.

76.     The foregoing deceptive acts and practices were directed at consumers.

77.     The foregoing deceptive acts and practices are misleading in a material way because they fundamentally misrepresent the characteristics of the Mislabeled Pet Foods to induce consumers to purchase same.

20

78.     By reason of this conduct, Defendant engaged in deceptive conduct in violation of New York's General Business Law.

79.     Defendant's action is the direct, foreseeable, and proximate cause of the damages that Plaintiff Salerno and members of the New York Subclass have sustained from having paid for and used Defendant's products.

80.     As a result of Defendant's violations, Plaintiff Salerno and members of the New York Subclass have suffered damages because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if they knew that the Grain-Free Claims were not true; (b) they paid a price premium for the Mislabeled Pet Foods due to the Grain-Free Claims; and (c) the Mislabeled Pet Foods do not have the characteristics, uses, benefits, or quantities as promised in that they are not grain-free.

81.     On behalf of herself and other members of the New York Subclass, Plaintiff Salerno seeks to recover her actual damages or fifty dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

<u>**COUNT V**</u>
**(Violation Of New York's General Business Law § 350)**

82.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

83.     Plaintiff Salerno brings this claim individually and on behalf of the members of the New York Subclass against Defendant.

84.     New York's General Business Law § 350 prohibits false advertising in the conduct of any business, trade, or commerce.

85.     Pursuant to said statute, false advertising is defined as "advertising, including labeling, of a commodity … if such advertising is misleading in a material respect."

21

86.     Based on the foregoing, Defendant has engaged in consumer-oriented conduct that is deceptive or misleading in a material way which constitutes false advertising in violation of Section 350 of New York's General Business Law.

87.     Defendant's false, misleading, and deceptive statements and representations of fact were and are directed to consumers.

88.     Defendant's false, misleading, and deceptive statements and representations of fact were and are likely to mislead a reasonable consumer acting reasonably under the circumstances.

89.     Defendant's false, misleading, and deceptive statements and representations of fact have resulted in consumer injury or harm to the public interest.

90.     As a result of Defendant's false, misleading, and deceptive statements and representation of fact, Plaintiff Salerno and the New York Subclass have suffered and continue to suffer economic injury.

91.     As a result of Defendant's violations, Plaintiff Salerno and members of the New York Subclass have suffered damages due to said violation because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if they knew that the HP Claims were not true; (b) they paid a price premium for the Mislabeled Pet Foods due to the Grain-Free Claims; and (c) the Mislabeled Pet Foods do not have the characteristics, uses, benefits, or quantities as promised in that the Mislabeled Pet Foods are not grain-free.

92.     On behalf of herself and other members of the New York Subclass, Plaintiff Salerno seeks to recover her actual damages or five hundred dollars, whichever is greater, three times actual damages, and reasonable attorneys' fees.

<u>**COUNT VI**</u>
**(Violation Of California's Consumers Legal Remedies Act ("CLRA"),**
**Cal. Civil Code §§ 1750, *et seq.*)**

93.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

94.     Plaintiffs Bush and DeHaven bring this claim individually and on behalf of the members of the California Subclass against Defendant.

95.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(5), prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status affiliation, or connection which he or she does not have."

96.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(7), prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

97.     California's Consumers Legal Remedies Act, Cal. Civ. Code § 1770(a)(9) disallows "[a]dvertising goods or services with intent not to sell them as advertised."

98.     Defendant violated this provision by misrepresenting that the Mislabeled Pet Foods are grain-free.

99.     Plaintiffs Bush and DeHaven and the California Subclass suffered injuries caused by Defendant because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if the true facts were known about the product; (b) they paid a price premium for the Mislabeled Pet Foods due to Defendant's promises that they were grain-free; and (c) the Mislabeled Pet Foods do not have the characteristics as promised by Defendant.

100.     On or about December 20, 2019,  prior to the filing of this Complaint, Plaintiffs' counsel sent Defendant a notice letter, which complies in all respects with California Civil Code

§1782(a). The letter was sent via certified mail, return receipt requested, advising Defendant that it was in violation of the CLRA and demanding that it cease and desist from such violations and make full restitution by refunding the monies received therefrom. The letter stated that it was sent on behalf of Plaintiffs Bush and DeHaven, and all other similarly situated purchasers. Defendant did not respond to the letter.

**COUNT VII**
**(Violation Of California's Unfair Competition Law ("UCL"),**
**Cal. Bus. & Prof. Code §§ 17200, et seq.)**

101.     Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

102.     Plaintiffs Bush and DeHaven bring this claim individually and on behalf of the members of the California Subclass against Defendant.

103.     Defendant is subject to California's Unfair Competition Law, Cal. Bus & Prof. Code §§ 17200, *et seq.* The UCL provides, in pertinent part: "Unfair Competition shall mean and include unlawful, unfair, or fraudulent business practices and unfair, deceptive, untrue, or misleading advertising …."

104.     Defendant's misrepresentations and other conduct, described herein, violated the "unlawful" prong of the UCL by violating the CLRA as described herein; the FAL as described herein; and Cal. Com. Code § 2607.

105.     Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of the UCL in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits.

106.     Defendant violated the "fraudulent" prong of the UCL by making misrepresentations about the Mislabeled Pet Foods, as described herein.

107.    Defendant's violation has continuing and adverse effects because Defendant's unlawful conduct is continuing, with no indication that Defendant intends to cease this fraudulent course of conduct.  The public – and Class Members – are subject to ongoing harm because the deceptive and misleading Grain-Free Claims are still in use by Defendant today.

108.    Plaintiffs Bush and DeHaven along with the California Subclass lost money or property as a result of Defendant's UCL violations because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if the true facts were known about the product; (b) they paid a price premium for the Mislabeled Pet Foods due to Defendant's promises that they were grain-free; and (c) the Mislabeled Pet Foods do not have the characteristics as promised by Defendant.

## COUNT VIII
### (Violation Of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code §§ 17500*, et seq.*)

109.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

110.    Plaintiffs Bush and DeHaven bring this claim individually and on behalf of the members of the California Subclass against Defendant.

111.    California's False Advertising Law, Cal. Bus. & Prof. Code §§ 17500, *et seq.*, makes it "unlawful for any person to make or disseminate or cause to be made or disseminated before the public in this state,  …in any advertising device … or in any other manner or means whatever, including over the Internet, any statement, concerning … personal property or services, professional or otherwise, or performance or disposition thereof, which is untrue or misleading and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

112.    Defendant committed acts of false advertising, as defined by § 17500, by misrepresenting that the Mislabeled Pet Foods are grain-free.

113.    Defendant knew or should have known, through the exercise of reasonable care that its representations about the Mislabeled Pet Foods were untrue and misleading.

114.    Defendant's actions in violation of § 17500, as described herein, were false and misleading such that the general public was and is likely to be deceived.

115.    Plaintiffs Bush, DeHaven, and the California Subclass lost money or property as a result of Defendant's FAL violations because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if the true facts were known about the product; (b) they paid a price premium for the Mislabeled Pet Foods due to Defendant's promises that they were grain-free; and (c) the Mislabeled Pet Foods do not have the characteristics as promised by Defendant.

## COUNT IX
### (Violation of Chapter 93A. Mass. Gen. Laws)

116.    Plaintiff Munie repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

117.    Plaintiff Munie brings this claim individually and on behalf of the members of the Massachusetts Subclass against Defendant.

118.    This action is appropriate because pursuant to General Law Chapter 93A:9(2):

a.    The unfair and deceptive act or practice committed by Defendant has caused similar injury to Plaintiff Munie as to numerous other persons similarly situated which Plaintiff Munie fairly represents.

b.    Plaintiff Munie brings this action on behalf of himself and all other persons within the Commonwealth similarly situated, with exclusions previously noted.

c.    Given the practice detailed above has persisted over time for many years and that the Defendant has, at least its principal place of business in Massachusetts, and on information and belief, market, distribute and sell to retail locations in the Commonwealth, it

26

would be impractical, if not impossible to seek relief for consumers on an individual basis.

119.    Defendant violated and continues to violate 940 [Mass. Code Regs.] 6[.]01 and violate the Federal Trade Commission Act[14], 15 U.S.C. § 45(a)(1) and 15 U.S.C. § 52(a), the CLRA and the FAL, as alleged herein.

120.    Defendant's misrepresentations and other conduct, described herein, violated the "unfair" prong of Gen. Mass. Laws ch. 93(A) in that their conduct is substantially injurious to consumers, offends public policy, and is immoral, unethical, oppressive, and unscrupulous, as the gravity of the conduct outweighs any alleged benefits, and Defendant's competitors do not engage in the same unlawful, unfair and deceptive practice.

121.    Defendant violated the deceptive prong of Gen. Mass. Laws ch. 93(A) by misrepresenting that the Products do not contain grain when they do in fact contain grain.

122.    Plaintiff Munie and the Massachusetts Subclass Members lost money or property as a result of Defendant's violations of Gen. Mass. Laws ch. 93(A) because: (a) they would not have purchased the Products on the same terms if they knew that the Products were made with grain (b) they paid a substantial price premium compared pet foods due to Defendant's misrepresentations; and (c) the Products do not have the characteristics, uses, or benefits as promised.

123.    The acts or practices engaged in by Defendant as detailed herein above constitute unfair and deceptive trade practices within the meaning of statutory and case law developed

---

[14] Pursuant to the Federal Trade Commission Act, "[u]nfair methods of competition in or affecting commerce, and unfair or deceptive acts or practices in or affecting commerce, are hereby declared unlawful." 15 U.S.C. § 45(a). It is an "unfair or deceptive act or practice" to disseminate "any false advertisement . . . (2) [b]y any means, for the purpose of inducing, or which is likely to induce, directly or indirectly, the purchase in or having an effect upon commerce, of food, drugs, devices, services, or cosmetics." 15 U.S.C. § 52(a), (b).

under General Law Chapter 93A, and under applicable sections of the code of Massachusetts

Regulations and the herein cited provisions of the Federal Trade Commission Act, and further

constitute "trade and commerce" as defined under Chapter 93A:1 and other applicable law.

124.    A demand letter as specified by Mass. Gen. Laws Chapter (ch.) 93A:9(3) was sent

to Defendant by certified mail and standard mail on December 20, 2020 to its main office in

Massachusetts.  The demand was sent more than 30 days prior to the filing of this Complaint and

no adequate response has been received during the required time frame.

125.    Plaintiff Munie and the Massachusetts Subclass Members are entitled to damages

and equitable relief as a result of Defendant's conduct.

### COUNT X
### (Violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.)

126.    Plaintiffs hereby incorporate by reference the allegations contained in all

 preceding paragraphs of this complaint.

127.    Plaintiffs bring this claim individually and on behalf of the members of the

proposed Nationwide Class against Defendant.

128.    The Mislabeled Pet Foods are consumer products as defined in 15 U.S.C

§ 2301(1).

129.    Plaintiffs and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

130.    Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301(4) and (5).

131.    In connection with the sale of the Mislabeled Pet Foods, Defendant issued written

warranties as defined in 15 U.S.C. § 2301(6), which warranted that the Mislabeled Pet Foods are

grain-free and did not contain grain.

132.    In fact, the Mislabeled Pet Foods contain grain.

28

133.    By reason of Defendant's breach of warranties, Defendant violated the statutory rights due to Plaintiffs and Class Members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq., thereby damaging Plaintiffs and Class Members.

134.    Plaintiffs and Class Members were injured as a direct and proximate result of Defendant's breach because: (a) they would not have purchased the Mislabeled Pet Foods on the same terms if the true facts were known about the product; (b) they paid a price premium for the Mislabeled Pet Foods due to Defendant's promise that it was grain-free; and (c) the Mislabeled Pet Foods did not have the characteristics as promised by Defendant.

## COUNT XI
**(Negligent Misrepresentation)**

135.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

136.    Plaintiffs DeHaven and Bush bring this claim individually and on behalf of the members of the proposed California Subclass against Defendant.

137.    As discussed above, Defendant misrepresented the grain content of the Mislabeled Pet Foods by virtue of the Grain-Free Claims.  Defendant had a duty to disclose the grain content of the Mislabeled Pet Foods rather than misrepresenting information.

138.    At the time Defendant made these representations, Defendant knew or should have known the representations were false or made them without knowledge of their truth or veracity.

139.    At an absolute minimum, Defendant negligently misrepresented and/or negligently omitted material facts about the Mislabeled Pet Foods, namely their true grain content.

140.    The negligent misrepresentations and omissions made by Defendant, upon which Plaintiffs DeHaven and Bush and the California Subclass Members reasonably and justifiably relied, were intended to induce and actually induced Plaintiffs and Class Members to purchase the Mislabeled Pet Foods.

141.    Plaintiffs DeHaven and Bush and the California Subclass Members would not have purchased the Mislabeled Pet Foods if the true facts about the Grain-Free Claims had been known.

142.    The negligent actions of Defendant caused damage to Plaintiffs DeHaven and Bush and the California Subclass Members, who are entitled to damages and other legal and equitable relief as a result.

## COUNT XII
### (Violation of State Consumer Fraud Acts)

143.    Plaintiffs hereby incorporate by reference the allegations contained in all preceding paragraphs of this complaint.

144.    Plaintiffs bring this claim individually and on behalf of the members of the proposed Consumer Fraud Multi-State Subclass.

145.    The Consumer Fraud Acts of the states in the Consumer Fraud Multi-State Subclass[15] prohibit the use of unfair or deceptive business practices in the conduct of trade or commerce.

---

[15] California (Cal. Bus. & Prof. Code § 17200, *et seq.*); Florida (Fla. Stat. § 501.201, *et seq.*); Illinois (815 Ill. Comp. Stat. 505/1*, et seq.*); Massachusetts (Mass. Gen. Laws Ch. 93A, *et seq.*); Michigan (Mich. Comp. Laws § 445.901, *et seq.*); Minnesota (Minn. Stat. § 325F.67, *et seq.*); Missouri (Mo. Rev. Stat. §407.010, *et seq.*); New Jersey (N.J. Stat. § 56:8-1, *et seq.*); New York (N.Y. Gen. Bus. Law §§ 349, 350 *et seq.*); and Washington (Wash. Rev. Code § 19.86.010, *et seq.*).

146.    Defendant intended that Plaintiffs and each of the other members of the Consumer Fraud Multi-State Subclass would rely upon its deceptive conduct, and a reasonable person would in fact be misled by this deceptive conduct.

147.    As a result of the Defendant's use or employment of unfair or deceptive acts or business practices, Plaintiffs and each of the other members of the Consumer Fraud Multi-State Subclass have sustained damages in an amount to be proven at trial.

148.    In addition, Defendant's conduct showed malice, motive, and the reckless disregard of the truth such that an award of punitive damages is appropriate.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all causes of action and issues so triable.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, seek judgment against Defendant, as follows:

a)    For an order certifying the Nationwide Class, the Consumer Fraud Multi-State Subclass, the California Subclass, the Massachusetts Subclass, and the New York Subclass under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs DeHaven and Bush as representatives of the Nationwide Class, Consumer Fraud Multi-State Subclass and California Subclass, Plaintiff Munie as a representative of the Nationwide Class, Consumer Fraud Multi-State Subclass and Massachusetts Subclass, and Plaintiff Salerno as a representative of the Nationwide Class, Consumer Fraud Multi-State Subclass, and New York Subclass, and Plaintiffs' attorneys as Class Counsel to represent the Nationwide Class, Consumer Fraud Multi-State Subclass, California Subclass, Massachusetts Subclass, and New York Subclass Members;

b)      For an order finding in favor of Plaintiffs, the Nationwide Class, the Consumer Fraud Multi-State Subclass the California Subclass, the Massachusetts Subclass, and the New York Subclass on all counts asserted herein;

c)      For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

d)      For prejudgment interest on all amounts awarded;

e)      For an order of restitution and all other forms of equitable monetary relief;

f)      For injunctive relief as pleaded or as the Court may deem proper; and

g)      For an order awarding the Plaintiffs, the Nationwide Class, the Consumer Fraud Multi-State Subclass, the California Subclass, the Massachusetts Subclass, and the New York Subclass their reasonable attorneys' fees, expenses, and costs of suit.

Dated: May 5, 2021                    **BURSOR & FISHER, P.A.**

                                      By:_____*/s/ L. Timothy Fisher*_____
                                                L. Timothy Fisher

                                      L. Timothy Fisher (*pro hac vice*)
                                      Frederick J. Klorczyk III (*pro hac vice*)
                                      Brittany Scott (*pro hac vice*)
                                      1990 North California Blvd., Suite 940
                                      Walnut Creek, CA 94596
                                      Telephone: (925) 300-4455
                                      Facsimile: (925) 407-2700
                                      E-Mail:  ltfisher@bursor.com
                                               fklorczyk@bursor.com
                                               bscott@bursor.com

                                      **FORREST, LAMOTHE, MAZOW,**
                                      **MCCULLOUGH, YASI & YASI, P.C.**
                                      Michael C. Forrest
                                      BBO #681401
                                      mforrest@forrestlamothe.com
                                      2 Salem Green, Suite 2
                                      Salem, MA 01970
                                      (617) 231-7829

32

**KAMBERLAW, LLC**
Scott Kamber
201 Milwaukee Street, Suite 200
Telephone: (303) 222-9008
E-Mail: skamber@kamberlaw.com

**KAMBERLAW, LLP**
Naomi B. Spector
1501 San Elijo Hills Road South, Suite 104-212
San Marcos, CA 92078
Telephone: (310) 400-1053
E-Mail: nspector@kamberlaw.com

*Attorneys for Plaintiffs*

**<u>CERTIFICATE OF SERVICE</u>**

I hereby certify that on May 5, 2021, a true and correct copy of the forgoing was served by CM/ECF to the parties registered to the Court's CM/ECF system.


Dated: May 5, 2021                          _____/s/ *L. Timothy Fisher*_____
                                                              L. Timothy Fisher

**EXHIBIT A**

# BURSOR & FISHER
### P.A.

1990 N. CALIFORNIA BLVD
SUITE 940
WALNUT CREEK, CA 94596
www.bursor.com

FREDERICK J. KLORCZYK III
Tel: 925.300.4455
Fax: 925.407.2700
fklorczyk@bursor.com

December 20, 2019

_**Via Certified Mail - Return Receipt Requested**_

WellPet, LLC
200 Ames Pond Drive
Tewksbury, MA 01876

WellPet, LLC
c/o C T Corporation System
155 Federal Street, Suite 700
Boston, MA 02110

Re:     _Notice and Demand Letter Pursuant to U.C.C. §§ 2-313, 2-314, 2-607;_
_the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.; New York General_
_Business Law §§ 349-50; Mass. Gen. Laws Chapter 93(A); and California's Consumers_
_Legal Remedies Act, Cal. Civil Code §§ 1750, et seq.; and all other applicable consumer_
_protection statutes_

To Whom it May Concern:

This letter serves as a preliminary notice and demand for corrective action by WellPet, LLC d/b/a Wellness ("Wellness"), pursuant to U.C.C. § 2-607(3)(a) concerning breaches of express and implied warranties on behalf of our clients Kimberley DeHaven and Marla Bush, and a class of all similarly situated purchasers of Wellness grain-free pet foods, including the (a) "Complete Health Grain Free" line, and (b) "Core" line (the "Grain Free Pet Foods"). This letter also serves as notice of violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, _et seq._; New York General Business Law §§ 349-50; Mass. Gen. Laws Chapter 93(A); and California's Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, _et seq._, including subsections 1770(a)(5), (7), and (9), and all other applicable federal and state laws. Should we not receive a response to our offer of resolution set forth below, this letter provides statutory notice of our intent to file a class action lawsuit.

Our clients purchased certain of the above-listed Grain Free Pet Foods, which Wellness repeatedly misrepresented and warranted were "grain-free." Our clients understood this to mean that their pet foods would not contain any grain, including gluten, a grain and/or grain by-product. However, according to independent laboratory testing, Wellness "grain-free" pet foods do contain gluten and therefore, contrary to Wellness' express representations, are not in fact grain-free. Accordingly, Wellness violated the California CLRA, New York GBL, Massachusetts General Law Chapter 93(A), and breached express and implied warranties made to our clients and the Class. _See_ U.C.C. §§ 2-313, 2-314, 2-607; 15 U.S.C. §§ 2301, _et seq._; New York General Business Law §§ 349-50; Mass. Gen. Laws Chapter 93(A); and California Civil

**BURSOR&FISHER**
P.A.

Code §§ 1750, *et seq.*  Our clients and similarly situated consumers were injured and damaged by purchasing the Grain Free Pet Foods.

On behalf of our clients and the Class, we hereby demand that Wellness immediately (1) issue a mandatory recall of Wellness Grain Free Pet Foods and (2) make full restitution to all purchasers of the Wellness Grain Free Pet Foods of all purchase money obtained from sales thereof.

We also demand that Wellness preserve all documents and other evidence which refer or relate to any of the above-described practices during the applicable class periods, including electronically stored information and including, but not limited to, the following:

1. All documents concerning the formulation, ingredient sourcing, packaging, labeling, and manufacturing process for Wellness Grain Free Pet Foods;

2. All tests of the Wellness Grain Free Pet Foods and their component parts, whether performed by Wellness or any other third-party entities;

3. All documents concerning the pricing, advertising, marketing, and/or sale of the Wellness Grain Free Pet Foods;

4. All communications with customers involving complaints or comments concerning the Wellness Grain Free Pet Foods;

5. All documents concerning communications with any retailer involved in the marketing or sale of the Wellness Grain Free Pet Foods;

6. All documents concerning communications with any supplier involved in the manufacturing or sale of the Wellness Grain Free Pet Foods; and

7. All documents concerning the total revenue derived from sales of the Wellness Grain Free Pet Foods.

If you contend that any statement in this letter is inaccurate in any respect, please provide us with your contentions and supporting documents immediately upon receipt of this letter.

Please contact me right away if you wish to discuss an appropriate way to remedy this matter.  If I do not hear from you promptly, I will take this as an indication that you are not interested in discussing this offer of resolution.

Very truly yours,

Frederick J. Klorczyk III