UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| MARLA BUSH, KIMBERLY DEHAVEN, NANCY MUNIE, and MONIQUE SALERNO, individually and on behalf of all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Case No. 1:21-cv-10059-RGS |
| WELLPET, LLC; and DOES 1 through 20, | ) ) | |
| Defendant. | ) ) ) | |

**MEMORANDUM IN SUPPORT OF WELLPET LLC'S
MOTION TO DISMISS PROPOSED FIRST AMENDED COMPLAINT**

## TABLE OF CONTENTS

INTRODUCTION ............................................................................................................... 1

BACKGROUND ................................................................................................................ 1

LEGAL STANDARD.......................................................................................................... 2

ARGUMENT...................................................................................................................... 3

    I.        Plaintiffs have failed to state a claim for breach of express warranty........................3

    II.       Plaintiffs have not stated a claim for breach of implied warranty. ...........................6

    III.     Plaintiffs have not stated a claim under the Magnuson-Moss Warranty Act............7

    IV.    Plaintiffs have failed to state a claim under the consumer protection statutes...........9

           A.     Plaintiffs have not alleged any deceptive conduct. ......................................10

           B.     Plaintiffs have not alleged any unfair conduct. ...........................................13

           C.     Plaintiffs have failed to allege any injury....................................................13

    V.       Plaintiffs have failed to state a claim for unjust enrichment. ...................................15

    VI.     Plaintiffs have not alleged a claim for negligent misrepresentation. .......................17

    VII.    Plaintiffs' claims on behalf of proposed class members fail...................................18

    VIII.   Plaintiffs are not entitled to injunctive relief...........................................................18

CONCLUSION................................................................................................................... 20

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*,
  17 A.D.3d 825 (N.Y. App. Div. 2005) ....................................................................7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)....................................................................................................2, 3

*Aspinall v. Philip Morris Cos.*,
  813 N.E.2d 476 (Mass. 2004) ..................................................................................10

*Axon v. Citrus World, Inc.*,
  354 F. Supp. 3d 170, (E.D.N.Y. 2018), *aff'd*, 813 F. App'x 701 (2d Cir. 2020)....................11

*Bell Atl. Corp. v. Twombly*,
  550 U.S. 544 (2007)....................................................................................................2

*Benson v. Fannie Mae Confections Brands, Inc.*,
  944 F.3d 639 (7th Cir. 2019) ....................................................................................16

*Bohac v. Gen. Mills, Inc.*,
  2014 WL 1266848 (N.D. Cal. Mar. 26, 2014)..........................................................6

*Bowling v. Johnson & Johnson*,
  65 F. Supp. 3d 371 (S.D.N.Y. 2014)....................................................................8, 17

*Brumfield v. Trader Joe's Co.*,
  2018 WL 4168956 (S.D.N.Y. Aug. 30, 2018) .........................................................17

*Carrillo v. Wm. Wrigley Jr. Co.*,
  2010 WL 11596523 (C.D. Cal. Apr. 15, 2010) .......................................................14

*Clapper v. Amnesty Int'l USA*,
  568 U.S. 398 (2013)....................................................................................................19

*Clemens v. DaimlerChrysler Corp.*,
  534 F.3d 1017 (9th Cir. 2008) ...................................................................................7

*Cohen v. JP Morgan Chase & Co.*,
  498 F.3d 111 (2d Cir. 2007)......................................................................................10

*Cruz v. Farquharson*,
  252 F.3d 530 (1st Cir. 2001)......................................................................................18

*Dimond v. Darden Rests., Inc.*,
  2014 WL 3377105 (S.D.N.Y. July 9, 2014) ....................................................14, 20

*Dopico v. IMS Trading Corp.*,
  2018 WL 4489677 (D.N.J. Sept. 18, 2018) ..............................................................9

*Ebner v. Fresh, Inc.*,
  838 F.3d 958 (9th Cir. 2016) ................................................................................11

*Elkind v. Revlon Consumer Prods. Corp.*,
  2015 WL 2344134 (E.D.N.Y. May 14, 2015) .................................................15, 20

*Fink v. Time Warner Cable*,
  714 F.3d 739 (2d Cir. 2013)..................................................................................11

*Fitzgerald v. Polar Corp.*,
  2020 WL 6586628 (D. Mass. Nov. 10, 2020) ........................................7, 11, 15

*Gerlinger v. Amazon.Com, Inc.*,
  311 F. Supp. 2d. 838 (N.D. Cal. 2004) ..................................................................16

*Hadley v. Kellogg Sales Co.*,
  243 F. Supp. 3d 1074 (N.D. Cal. 2017) .........................................................10, 11

*Hairston v. South Beach Beverage Co.*,
  2012 WL 1893818 (C.D. Cal. May 18, 2012) .........................................................9

*In re ConAgra Foods, Inc.*,
  90 F. Supp. 3d 919 (C.D. Cal. 2015) ......................................................................3

*In re Frito-Lay North America, Inc. All Natural Litig.*,
  2013 WL 4647512 (E.D.N.Y. Aug. 29, 2013)..........................................................8

*In re Nexus 6P Prods. Liab. Litig.*,
  293 F. Supp. 3d 888 (N.D. Cal. 2018) ..................................................................13

*In re Outlaw Lab., LLP*,
  463 F. Supp. 3d 1068 (S.D. Cal. 2020)..................................................................10

*In re Trader Joe's Tuna Litig.*,
  289 F. Supp. 3d 1074 (C.D. Cal. 2017) .................................................................17

*Isaac v. Ashley Furniture Indus., Inc.*,
  2017 WL 4684027 (D. Mass. Oct. 18, 2017)...................................................10, 11

*Jones v. ConAgra Foods, Inc.*,
  912 F. Supp. 2d 889 (N.D. Cal. 2012) ....................................................................8

*Kaplan v. Fulton Street Brewery, LLC*,
   2018 WL 2187369 (D. Mass. May 11, 2018) ...........................................................18

*Kingston v. FCA US LLC*,
   2019 WL 7753446 (C.D. Cal. Dec. 10, 2019) ...........................................................16

*L–7 Designs, Inc. v. Old Navy, LLC*,
   647 F.3d 419 (2d Cir. 2011) ................................................................................3

*Ladore v. Sony Computer Entm't Am., LLC*,
   75 F. Supp. 3d 1065 (N.D. Cal. 2014) ...................................................................17

*Lanovaz v. Twinings N. Am., Inc.*,
   726 F. App'x 590 (9th Cir. 2018) .........................................................................19

*Levings v. Forbes & Wallace, Inc.*,
   396 N.E.2d 149 (Mass. App. Ct. 1979) ..................................................................10

*Loomis v. Slendertone Dist., Inc.*,
   420 F. Supp. 3d 1046 (S.D. Cal. 2019) ....................................................................7

*Minkler v. Apple, Inc.*,
   65 F. Supp. 3d 810 (N.D. Cal. 2014) .......................................................................7

*Nicosia v. Amazon.com, Inc.*,
   834 F.3d 220 (2d Cir. 2016) ................................................................................19

*O'Shea v. Littleton*,
   414 U.S. 488 (1974) .....................................................................................18, 19

*Parks v. Ainsworth Pet Nutrition, LLC*,
   377 F. Supp. 3d 241 (S.D.N.Y. 2019) ............................................................. *passim*

*Pershouse v. L.L. Bean, Inc.*,
   368 F. Supp. 3d 185 (D. Mass. 2019) ..................................................................8, 14

*Philips v. Ford Motor Co.*,
   2015 WL 4111448 (N.D. Cal. July 7, 2015) ...........................................................16

*Platten v. HG Bermuda Exempted Ltd.*,
   437 F.3d 118 (1st Cir. 2006) ...............................................................................16

*Rahman v. Mott's LLP*,
   2018 WL 4585024 (N.D. Cal. Sept. 25, 2018) ........................................................20

*Reid v. GMC Skin Care USA Inc.*,
   2016 WL 403497 (N.D.N.Y. Jan. 15, 2016) ..............................................................9

*Robinson Helicopter Co. v. Dana Corp.*,
    34 Cal. 4th 979 (2004) ............................................................................................18

*Rojas-Lozano v. Google, Inc.*,
    159 F. Supp. 3d 1101 (N.D. Cal. 2016) ...............................................................9, 10

*Rothbaum v. Samsung Telecomms. Am., LLC*,
    52 F. Supp. 3d 185 (D. Mass. 2014) .........................................................................6

*Ruiz Rivera v. Pfizer Pharm., LLC*,
    521 F.3d 76 (1st Cir. 2008) .......................................................................................3

*Santos v. Sanyo Mfg. Corp.*,
    2013 WL 1868268 (D. Mass. May 3, 2013) .....................................................16, 18

*Schatz v. Republican State Leadership Comm.*,
    669 F.3d 50 (1st Cir. 2012) .......................................................................................3

*Shaulis v. Nordstrom Inc.*,
    120 F. Supp. 3d 40 (D. Mass. 2015) .....................................................................3, 9

*Shaulis v. Nordstrom, Inc.*,
    865 F.3d 1 (1st Cir. 2017) .....................................................................14, 15, 16, 20

*Silva v. Smucker Natural Foods, Inc.*,
    2015 WL 5360022 (E.D.N.Y. Sept. 14, 2015) .........................................................6

*Solak v. Hain Celestial Group, Inc.*,
    2018 WL 1870474 (N.D.N.Y. Apr. 17, 2018) ..........................................................3

*Strumlauf v. Starbucks Corp.*,
    192 F. Supp. 3d 1025, 1035-36 (N.D. Cal. 2016) ..................................................18

*Summers v. Earth Island Inst.*,
    555 U.S. 488 (2009) ................................................................................................19

*Tabler v. Panera LLC*,
    2019 WL 5579529 (N.D. Cal. Oct. 29, 2019) .........................................................20

*Tomasella v. Nestlé USA, Inc.*,
    364 F. Supp. 3d 26 (D. Mass. 2019) .........................................................................9

*Tomasella v. Nestlé USA, Inc.*,
    962 F.3d 60 (1st Cir. 2020) .........................................................................10, 13, 16

*Tomasino v. Estee Lauder Cos.*,
    44 F. Supp. 3d 251 (E.D.N.Y. 2014) .........................................................................7

*Town of Chester v. Laroe Estates, Inc.*,
   137 S. Ct. 1645 (2017)................................................................................19

*Watkins v. Omni Life Science, Inc.*,
   692 F. Supp. 2d 170 (D. Mass. 2010)......................................................15

*Williams v. Gerber Prods. Co.*,
   552 F.3d 934 (9th Cir. 2008) ....................................................................10

**Statutes**

15 U.S.C. § 2301 et seq...................................................................................7

15 U.S.C. § 2301(6) .........................................................................................7

15 U.S.C. § 2311(d) .........................................................................................8

21 U.S.C. § 321(f)............................................................................................9

21 U.S.C. § 341 et seq......................................................................................9

Cal. Bus. & Prof. Code § 17200 ....................................................................10

Cal. Bus. & Prof. Code § 17204 ..............................................................10, 14

Cal. Bus. & Prof. Code § 17500 ....................................................................10

Cal. Bus. & Prof. Code § 17535 ..............................................................10, 14

Cal. Civ. Code § 1770(a)(5)...........................................................................10

Cal. Civ. Code § 1780(a) ...............................................................................10

Cal. Com. Code § 2313(1)(a)...........................................................................3

Cal. Com. Code § 2314.....................................................................................6

Mass. Gen. Laws ch. 93A, § 2(a)....................................................................9

Mass. Gen. Laws ch. 93A, § 2(b) .................................................................13

Mass. Gen. Laws ch. 93A, § 9(1) ...................................................................9

Mass. Gen. Laws ch. 106, § 2-314..................................................................6

N.Y. Gen. Bus. Law § 349..................................................................9, 13, 20

N.Y. Gen. Bus. Law § 350..................................................................9, 13, 20

N.Y. U.C.C. Law § 2-313(1)(a) ..................................................................................................3

N.Y. U.C.C. Law § 2-314 .........................................................................................................6

**Other Authorities**

21 C.F.R. § 501.1 et seq. .........................................................................................................9

## INTRODUCTION

The Court dismissed Plaintiffs' initial complaint on April 14, 2021, having found that the phrase "grain free" in Wellness Complete Health™ Grain Free and Wellness CORE® Grain Free pet foods is not false or misleading to reasonable consumers merely because laboratory testing allegedly found some undisclosed amount of gluten (not grain) in these products. Nothing in the proposed amended complaint should change the Court's mind. It provides no meaningful new allegations, other than to purport that the laboratory testing showed only insignificant amounts of gluten (as suspected). Accordingly, the Court's reasons for dismissing the initial complaint apply with full force to the proposed amended complaint:

- Gluten is not a grain;

- "Grain free" therefore does not mean the same as "gluten free";

- Plaintiffs don't allege that WellPet intentionally added gluten to the products; and

- The presence of a minute amount of gluten, which is a protein, doesn't detract from the benefits Plaintiffs sought to obtain from grain-free pet food, namely, that it contains more protein and animal fats and fewer carbohydrates than grain-based pet foods.

For all the reasons set out in the Court's April 14, 2021 Order and those in this motion, the Court should dismiss the proposed amended complaint for failure to state a claim.

## BACKGROUND

Plaintiffs, citizens of Massachusetts, New York, and California, bought Wellness Complete Health™ Grain Free brand and Wellness CORE® Grain Free brand dog and cat food (collectively, "the Products") for their pets in October 2019 and January 2020. (FAC ¶¶ 8-11.) Plaintiffs bought the Products after reviewing the packaging and understanding that the Products were "grain free." (*Id.*) According to the amended complaint, "[g]rain-free pet foods are desired by consumers who

believe that dogs and cats require pet foods that contain more protein and animal fats and fewer carbohydrates than grain-based pet foods." (*Id.* ¶ 16.) Further, "grain-free pet foods are considered easily digestible and more similar to pets' natural diets." (*Id.*) Plaintiffs allege that the Products' packaging is false and misleading because the Products are, in fact, *not* "grain free," based on laboratory testing showing the presence of tiny amounts of gluten.[1] (*Id.* ¶ 30.) Gluten is a protein found in certain grains, including wheat, barley, and rye. (*Id.* ¶ 14.) Plaintiffs still do *not* allege that the Products contain any grain ingredients.

Plaintiffs purport to bring twelve causes of action, including breach of express and implied warranty, violation of the Magnuson-Moss Warranty Act and various state consumer protection statutes, unjust enrichment, and negligent misrepresentation. (FAC, Counts I-XII.) Plaintiffs also seek to represent a nationwide class and various subclasses of consumers who purchased the Products.

## **LEGAL STANDARD**

A court should dismiss a complaint if it fails to set forth "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 697 (2009). The pleading standard "demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation" and more than "labels and conclusions." *Iqbal*, 556 U.S. at 678. Nor is it enough to allege facts "merely consistent with" liability or showing only that entitlement to relief is *possible*. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 557. The factual allegations "must be enough to raise a right to relief above a speculative level." *Twombly*, 550 U.S. at 555. "Plausibility ... depends on a host of considerations: the full factual picture presented by

---

[1] Plaintiffs do not allege that this laboratory testing was performed on the specific bags of pet food they bought personally.

the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable." *L–7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011). "[G]auging a pleaded situation's plausibility is a 'context-specific' job that compels [the court] 'to draw on' [its] 'judicial experience and common sense.'" *Schatz v. Republican State Leadership Comm.*, 669 F.3d 50, 55 (1st Cir. 2012) (quoting *Iqbal*, 556 U.S. at 677). Dismissal is appropriate when the facts alleged do not "possess enough heft to show that plaintiff is entitled to relief." *Shaulis v. Nordstrom Inc.*, 120 F. Supp. 3d 40, 45 (D. Mass. 2015) (quoting *Ruiz Rivera v. Pfizer Pharm., LLC*, 521 F.3d 76, 84 (1st Cir. 2008)).

## ARGUMENT

### I.   Plaintiffs have failed to state a claim for breach of express warranty.

Plaintiffs have not cured—and cannot cure—the deficiencies in their claims for breach of express warranty. Under New York and California law,[2] an express warranty can be created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes part of the basis of the bargain[.]" N.Y. U.C.C. Law § 2-313(1)(a); Cal. Com. Code § 2313(1)(a). To assert an express-warranty claim, the affirmation of fact or promise must have been "part of the basis of the bargain," *id.*, and "still must meet the threshold requirement of 'be[ing] material to a reasonable consumer,'" *Solak v. Hain Celestial Group, Inc.*, 2018 WL 1870474, at *11 (N.D.N.Y. Apr. 17, 2018) (citing *In re ConAgra Foods, Inc.*, 90 F. Supp. 3d 919, 985 (C.D. Cal. 2015)).

The Court held that the initial complaint failed to state a claim for breach of express warranty because "[g]luten is not a grain," but "rather a family of proteins (glutenin and gliadin)

---

[2] Plaintiffs concede that the economic loss doctrine bars their express-warranty claim under Massachusetts law. 4/14/21 Order (Dkt. 20), at 4 n.4.

often found in some (but not all) grains" and any argument to the contrary is "demonstrably false." 4/14/21 Order (Dkt. 20), at 4-5, 11. Because "gluten free" and "grain free" have separate and distinct meanings, "the mere presence of gluten in a product, regardless of the amount, does not plausibly demonstrate breach of a warranty of 'grain free.'" *Id.* at 7. The amended complaint doesn't allege that the Products contain grain; rather, it simply (and unconvincingly) doubles down on Plaintiffs' unsupported position that "gluten free" means "grain free." The Court has already rejected this argument. *Id.* at 4-5 & 6 n.6; *see also Parks v. Ainsworth Pet Nutrition, LLC*, 377 F. Supp. 3d 241, 248 (S.D.N.Y. 2019) ("The presence of unspecified trace amounts of glyphosate is not a breach of warranty that the Products are "natural.").

Plaintiffs have not provided the Court with any new facts to salvage this claim. Plaintiffs now allege that some unidentified "major retailer's website" categorizes the Products as both "grain free" and "gluten free." (FAC ¶ 25.) But there are no facts alleged showing that WellPet had anything to do with how this retailer listed the Products. And the fact that "grain free" and "gluten free" appear on this retailer's website as separate pet food categories further shows that these terms have separate and distinct meanings to consumers, as the Court has already recognized. 4/14/21 Order, at 4-5 & 6 n.6. In any event, Plaintiffs do not allege that they visited this retailer's website (or any website) before buying the Products, so these allegations are irrelevant. *See id.* at 2 n.1 ("Plaintiffs, however, do not allege that they reviewed or relied on the website in purchasing the products.").

Plaintiffs also allege that the back of the bag for one of the Wellness CORE® dog foods says that it contains "no 'wheat' or 'wheat-gluten.'" (FAC ¶ 27.) This also doesn't help Plaintiffs. First, that's not what the bag says. It says "no *added* wheat, wheat-gluten, corn, soy, eggs, artificial preservatives, colors, or flavors." *Id.* (depicting packaging) (emphasis added). Plaintiffs do not

allege that WellPet has intentionally added wheat or wheat-gluten to the Products. What's more, Plaintiffs do not allege that there *is* any wheat or wheat-gluten in the Products. (The amended complaint doesn't identify the source of the gluten.)

Second, Plaintiffs do not allege that they were trying to avoid the presence of gluten. Indeed, the allegations regarding the named Plaintiffs' reasons for buying the Products are unchanged from the initial complaint. (*Compare* FAC ¶¶ 8-11 *with* Compl. ¶¶ 8-11.) As the Court noted, Plaintiffs don't allege that their pets have any gluten (or grain) allergies. *See* 4/14/21 Order, at 8 n.8. Instead, Plaintiffs continue to plead only that they wanted the benefits of a "grain-free" pet food. Finally, neither of the two Plaintiffs who allegedly bought Wellness CORE® dog food (Bush and Salerno) allege that they read or relied on this statement before buying the Product, so the statement is irrelevant.

Plaintiffs' express-warranty claims also fail because they have not shown that they failed to receive the benefit of their bargain. Plaintiffs allege that they bought grain-free products because they contain "more protein and animal fats and fewer carbohydrates than grain-based pet foods" and, as a result, "are considered easily digestible and more similar to pets' natural diets." (FAC ¶ 16); Pls.' Opp. at 11. Because "gluten is a protein," the Court found that "its presence in the products does nothing to detract from the benefits plaintiffs sought to obtain from grain free pet food." 4/14/21 Order, at 12; *id*. at 13 n.13 (finding that the presence of gluten "would not increase the carbohydrate content of the products or otherwise negate the benefits which plaintiffs sought from grain free pet foods"). Plaintiffs' pets received all the desired nutritional benefits associated with more protein and fat and fewer carbohydrates. The amended complaint doesn't add any new facts showing that Plaintiffs failed to receive the benefit of their bargain. Accordingly, the express-warranty claims fail.

**II.     Plaintiffs have not stated a claim for breach of implied warranty.**

Plaintiffs' implied-warranty claims likewise remain deficient. Plaintiffs allege that WellPet impliedly warranted that the Products were "grain-free." (FAC ¶ 56.) Plaintiffs further allege that the Products "could not pass without objection in the trade under the contract description," "were not of fair average quality within the description," and "were unfit for their intended and ordinary purpose[.]" (FAC ¶ 57); *see* Mass. Gen. Laws ch. 106, § 2-314; N.Y. U.C.C. Law § 2-314; Cal. Com. Code § 2314. None of these theories is viable. To the extent Plaintiffs are alleging that the Products failed to conform to promises or affirmations of fact on the label, their implied-warranty claims fail for the same reasons their express-warranty claims fail: the Products don't contain any grain ingredients and, accordingly, satisfy the "grain free" representation.

Plaintiffs' allegations based on fitness and quality also miss the mark. To determine whether a product is fit for the ordinary purposes for which it is sold, "[t]he level of review is not that of the subjective expectations of the particular user, but the reasonable expectations of an ordinary user or purchaser." *Rothbaum v. Samsung Telecomms. Am., LLC*, 52 F. Supp. 3d 185, 201 (D. Mass. 2014); *Bohac v. Gen. Mills, Inc*., 2014 WL 1266848, at *9 (N.D. Cal. Mar. 26, 2014) ("The [California] Commercial Code does not impose a general requirement that goods precisely fulfill the expectation of the buyer.") (cleaned up). Moreover, the implied warranty of merchantability is directed at the "operative essentials of a product" and doesn't require "perfection of detail." *Rothbaum*, 52 F. Supp. 3d at 201; *see Silva v. Smucker Natural Foods, Inc.*, 2015 WL 5360022, at *11 (E.D.N.Y. Sept. 14, 2015) ("Where the sale of a food or beverage is concerned, courts have ruled that the product need only be fit for … consumption to be of merchantable quality."); *Bohac*, 2014 WL 1266848, at *9 (The California Commercial Code "provides for a minimum level of quality."). As the Court found, "Plaintiffs have not shown that the presence of gluten renders the products unsuitable for their intended and ordinary use. The

6

value of grain free food is that it allegedly is 'easily digestible' and contains 'more protein and animal fats and fewer carbohydrates than grain-based foods.'" 4/14/21 Order, at 8. "The addition of gluten, a protein, does not undermine or otherwise diminish this benefit." *Id*. The amended complaint pleads the same facts. *See* FAC ¶¶ 15-16.

Plaintiffs' implied-warranty claims fail for additional reasons. Plaintiff Munie's implied-warranty claim fails under Massachusetts law because she seeks only economic damages, without any claim of personal injury or property damage. *Fitzgerald v. Polar Corp.*, 2020 WL 6586628, at *4 n.9 (D. Mass. Nov. 10, 2020) (citing cases). The implied-warranty claims of Plaintiffs DeHaven, Bush, and Salerno fail under California and New York law because they have not demonstrated that they were in privity with WellPet. *Loomis v. Slendertone Dist., Inc.*, 420 F. Supp. 3d 1046, 1088 (S.D. Cal. 2019) ("A plaintiff asserting breach of an implied warranty must be in vertical privity with the defendant" and "an end consumer … who buys from a retailer is not in privity with a manufacturer") (citing *Clemens v. DaimlerChrysler Corp.*, 534 F.3d 1017, 1023 (9th Cir. 2008)); *Tomasino v. Estee Lauder Cos.*, 44 F. Supp. 3d 251, 262-63 (E.D.N.Y. 2014) ("Absent privity of contract, [] a purchaser cannot recover mere economic loss against a manufacturer under a theory of breach of implied warranty."); *Adirondack Combustion Techs., Inc. v. Unicontrol, Inc.*, 17 A.D.3d 825, 827 (N.Y. App. Div. 2005) ("A claim based upon breach of an implied warranty requires a showing of privity between the manufacturer and the plaintiff when there is no claim for personal injuries.").

For all these reasons, the Court should dismiss Plaintiffs' implied-warranty claims.

## III. Plaintiffs have not stated a claim under the Magnuson-Moss Warranty Act.

Plaintiffs' claims under the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq., suffer the same fate. Plaintiffs allege that the "grain free" description breached a written warranty as defined in 15 U.S.C. § 2301(6), and thereby violated the MMWA. (FAC ¶¶ 126-134.)

7

As set forth in the Court's Order, because Plaintiffs' state-law warranty claims fail, the MMWA claims fail too. 4/14/21 Order, at 8; *see Pershouse v. L.L. Bean, Inc.*, 368 F. Supp. 3d 185, 191 (D. Mass. 2019) ("State law [] provides the substantive law to apply to a claim under the MMWA").

The MMWA claims fail for additional reasons. The definition of a written warranty under the MMWA is narrow and doesn't apply here. A "written warranty" is "any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and *affirms or promises that such material or workmanship is defect free* or *will meet a specified level of performance over a specified period of time*." 15 U.S.C. § 2301(6) (emphasis added). The Products' "grain free" statement is not a warranty against a product defect, nor does it promise a specified level of performance over a specified time period—it's just a product description. *See Bowling v. Johnson & Johnson*, 65 F. Supp. 3d 371, 377-78 (S.D.N.Y. 2014) ("'Restores Enamel' [on mouthwash label] is a product description, not a promise of performance over time."); *Jones v. ConAgra Foods, Inc.*, 912 F. Supp. 2d 889, 903-04 (N.D. Cal. 2012) (statements such as "all natural" on labels are "product descriptions" and not "warranties against a product defect"); *In re Frito-Lay North America, Inc. All Natural Litig.*, 2013 WL 4647512, at *17 (E.D.N.Y. Aug. 29, 2013) ("An 'All Natural' label does not warrant a product free from defect … Nor does it constitute a promise that the product will meet a specified level of performance over a specified period of time.") (cleaned up).

Plaintiffs' MMWA claims also fail because the Products' labels are governed by federal law. The MMWA is "inapplicable to *any written warranty* the making or content of which is otherwise governed by Federal law." 15 U.S.C. § 2311(d) (emphasis added). The Federal Food, Drug, and Cosmetic Act ("FDCA") "requires that all animal foods, like human foods, be safe to

8

eat, produced under sanitary conditions, contain no harmful substances, and be truthfully labeled." *Dopico v. IMS Trading Corp.*, 2018 WL 4489677, at *6 (D.N.J. Sept. 18, 2018) (citing Food and Drug Administration ("FDA") pet food website); *see* 21 U.S.C. § 341 et seq. (FDCA subchapter on food); *id.* § 321(f) (defining "food" to include food for animals). In addition, FDA regulations govern animal food labeling and packaging. *See* 21 C.F.R. § 501.1 et seq.

"The majority of courts that have considered whether [15 U.S.C.] § 2311(d) bars an MMWA claim founded on the labels of products governed by the FDCA have concluded that the MMWA claim is barred." *Reid v. GMC Skin Care USA Inc.*, 2016 WL 403497, at *13 (N.D.N.Y. Jan. 15, 2016) (citing cases); *see Hairston v. South Beach Beverage Co.*, 2012 WL 1893818, at *5 (C.D. Cal. May 18, 2012) (dismissing MMWA claim because "the FDCA and FDA labeling regulations govern the Lifewater labeling"); *Dopico*, 2018 WL 4489677, at *6 (finding that the MMWA is inapplicable to dog treat labeling). Because the FDCA and FDA regulations govern the Products' labeling, the Court should dismiss the MMWA claims.

## IV. Plaintiffs have failed to state a claim under the consumer protection statutes.

Plaintiffs' amended complaint likewise fails to state a claim under Chapter 93A, New York General Business Law Sections 349 and 350, and California's Consumers Legal Remedies Act ("CLRA"), Unfair Competition Law ("UCL"), and False Advertising Law ("FAL"). To state a claim under these statutes, Plaintiffs must plead, among other things, facts showing that the labeling of the Products is deceptive or unfair and that Plaintiffs were injured as a result. *See Tomasella v. Nestlé USA, Inc.*, 364 F. Supp. 3d 26, 32 (D. Mass. 2019) (citing Mass. Gen. Laws ch. 93A, § 2(a)); *Shaulis v. Nordstrom, Inc.*, 120 F. Supp. 3d 40, 49-50 (D. Mass. 2015); Mass. Gen. Laws ch. 93A, § 9(1); *Parks,* 377 F. Supp. 3d at 246-47 (citing N.Y. Gen. Bus. Law §§ 349, 350); *Rojas-Lozano v. Google, Inc.*, 159 F. Supp. 3d 1101, 1112 (N.D. Cal. 2016) (discussing

CLRA claims); *id.* at 1117, 1119 (discussing UCL claims); *In re Outlaw Lab., LLP*, 463 F. Supp. 3d 1068, 1085-86 (S.D. Cal. 2020) (discussing FAL claims); Cal. Civ. Code §§ 1770(a)(5), 1780(a); Cal. Bus. & Prof. Code §§ 17200, 17204, 17500, 17535. Despite receiving an opportunity to amend, Plaintiffs still have not made –and cannot make—this showing.

### A.    Plaintiffs have not alleged any deceptive conduct.

Plaintiffs have not alleged that the packaging is deceptive. As an initial matter, before challenged conduct can rise to the level of violating a consumer protection statute, it "must attain a level of rascality that would raise an eyebrow of someone inured to the rough and tumble of the world of commerce." *Isaac v. Ashley Furniture Indus., Inc.*, 2017 WL 4684027, at *1 (D. Mass. Oct. 18, 2017) (quoting *Levings v. Forbes & Wallace, Inc.*, 396 N.E.2d 149, 153 (Mass. App. Ct. 1979)). All such claims are subject to the reasonable consumer standard. *See Tomasella v. Nestlé USA, Inc.*, 962 F.3d 60, 71 (1st Cir. 2020) ("An act or practice is deceptive [under chapter 93A] if it 'has the capacity to mislead consumers, acting reasonably under the circumstances, to act differently from the way they otherwise would have acted (i.e., to entice a reasonable consumer to purchase the product.") (quoting *Aspinall v. Philip Morris Cos.*, 813 N.E.2d 476, 488 (Mass. 2004)); *Parks*, 377 F. Supp. 3d at 247 ("[T]he alleged act must be likely to mislead a reasonable consumer acting reasonably under the circumstances.") (quoting *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) (applying New York law)); *Hadley v. Kellogg Sales Co.*, 243 F. Supp. 3d 1074, 1089 (N.D. Cal. 2017) ("Under the FAL, the CLRA, and the fraudulent prong of the UCL, conduct is considered deceptive or misleading if the conduct is 'likely to deceive' a 'reasonable consumer.'") (quoting *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008)).

Under the reasonable consumer standard, Plaintiffs must allege "more than a mere possibility that the [packaging] might conceivably be misunderstood by some few customers

viewing it in an unreasonable manner." *Hadley*, 243 F. Supp. 3d at 1092 (citations omitted). Plaintiffs "must plausibly allege that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Axon v. Citrus World, Inc.*, 354 F. Supp. 3d 170, 182 (E.D.N.Y. 2018), *aff'd*, 813 F. App'x 701 (2d Cir. 2020) (cleaned up, citations omitted); *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016). "[I]n determining whether a reasonable consumer would have been misled by a particular advertisement, context is crucial." *Fink v. Time Warner Cable*, 714 F.3d 739, 742 (2d Cir. 2013). And when a plaintiff's reliance is not reasonable, her "subjective reliance on a company's product representations or slogans will not justify an inference that the representations were deceptive." *Isaac*, 2017 WL 4684027, at *1. It is "well settled that a court may determine as a matter of law that an allegedly deceptive advertisement would not have misled a reasonable consumer." *Fitzgerald*, 2020 WL 6586628, at *5 (quoting *Fink*, 714 F.3d at 741).

Plaintiffs have failed to allege any deception by WellPet. First and foremost, "[g]luten is not a grain." 4/14/21 Order, at 4-5, 11 (contrasting "gluten" and "grain"). Accordingly, "the presence of gluten does not render the 'grain free' promise false[.]" *Id.* at 13, 14. The phrase "grain free" also is not misleading to reasonable consumers. As the Court found, "[e]ven assuming that a consumer … were gullible enough to believe that gluten is a grain[,] Plaintiffs do not allege that WellPet intentionally added gluten[.] Gluten can find its way into a product by any number of paths." *Id.* at 6. As an example, the Court specifically noted that "the stickiness of gluten puts even non-glutinous products at risk of turning up trace amounts of gluten if manufactured on the same machinery as glutinous products." *Id.*; *see id.* at 11 n.11 (noting that FDA does not require animal food manufacturers to list "[i]ncidental additives" that are present at "insignificant levels," including substances that "migrat[e] to food from equipment or packaging"). As a result, "[a]

11

reasonable consumer ... would not be so 'absolutist' as to require a 'grain free' product to contain no gluten, however negligible the amount actually present." *Id.* at 6-7 (citing *Parks*, 377 F. Supp. 3d at 247).

The Court also noted that "ordinary consumers are familiar with gluten as a stand-alone substance commonly sold in the baking aisle of any supermarket" and they are able to find "gluten-producing grains processed to remove gluten." *Id.* at 6 n.6. "Under the circumstances," the Court found, "any reasonable consumer would know that 'gluten free' and 'grain free' carry different connotations and promise the absence of different ingredients." *Id.* The amended complaint doesn't add any new facts to alter the Court's conclusion.

Plaintiffs now allege their laboratory testing revealed that the Products contained 520 parts per million ("ppm") and 290 ppm of gluten.[3] (FAC ¶ 30.) But this doesn't change the fact that "grain free" and "gluten free" have different meanings. Moreover, this equates to just 0.052% and 0.029% of the pet food, which are insignificant amounts. Plaintiffs point out that these amounts are above the FDA limit for a human food product to be labeled "gluten free." (*Id.*) However, this is irrelevant because the Products are neither human food, nor labeled "gluten free."

As WellPet stated in its initial motion to dismiss, reasonable consumers understand "grain free" as meaning that the pet food recipes don't include any grain *ingredients*, not as a guarantee that the pet foods are completely free of trace amounts of gluten, a protein found in certain grains. Any such inference simply reads too much into the labeling. *See generally Parks*, 377 F. Supp. 3d at 247 (finding that "natural" label on dog food was not misleading due to the presence of "accidental and innocuous amount" of glyphosate).

---

[3] The amended complaint doesn't identify which Products contained these gluten levels or provide any further information on the testing.

**B.**     **Plaintiffs have not alleged any unfair conduct.**

The Products' packaging also is not unfair. When adjudicating unfairness claims under the consumer protection statutes, courts in Massachusetts and California have been guided by some form of the unfairness test set forth in the Federal Trade Commission Act.[4] *See* Mass. Gen. Laws ch. 93A, § 2(b); *Tomasella*, 962 F.3d at 70-71; *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 930 (N.D. Cal. 2018). "[A] practice or act will be unfair under [Chapter 93A], if it is (1) within the penumbra of a common law, statutory, or other established concept of unfairness; (2) immoral, unethical, oppressive, or unscrupulous; or (3) causes substantial injury [to consumers,] competitors or other business people." *Tomasella*, 962 F.3d at 79 (alteration in original). Similarly, under California's UCL, a practice is unfair "when it offends an established public policy or when the practice is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *In re Nexus 6P*, 293 F. Supp. 3d at 930. Alternatively, an unfair practice is one that results in a "substantial" injury to consumers that is not "outweighed by any countervailing benefits to consumers or competition," and which is "an injury that consumers themselves could not reasonably have avoided." *Id.* (citation omitted).

Plaintiffs' unfairness claims are premised on the same factual allegations as their deceptive practice claims. (FAC ¶¶ 101-107, 116-120.) For the same reasons the Products' packaging is not deceptive, it also is not unfair. *See* 4/14/21 Order, at 12-13. And, as set forth in the next section, Plaintiffs have not been injured, much less suffered a "substantial" injury.

**C.**     **Plaintiffs have failed to allege any injury.**

Plaintiffs' amended complaint still fails to allege facts showing that Plaintiffs have

---

[4] The New York consumer protection statutes don't provide a separate claim for unfair business practices (only deceptive practices and false advertising). *See* N.Y. Gen. Bus. Law §§ 349, 350.

experienced any injury. Plaintiffs allege that they paid a premium for grain-free pet food and failed to receive the benefit of their bargain because the food was not grain free. (FAC ¶¶ 8-11, 80, 91, 99, 108, 115, 122.) A legally cognizable injury claim "must involve objective, identifiable harm that goes beyond the deception itself." *Shaulis v. Nordstrom, Inc.*, 865 F.3d 1, 10 (1st Cir. 2017) (cleaned up, citations omitted); *see Dimond v. Darden Rests., Inc.*, 2014 WL 3377105, at *9 (S.D.N.Y. July 9, 2014) ("Under § 349, deception and injury must be separately pled."). A plaintiff must show "real economic damages," not "speculative harm," and "claims of injury premised on 'overpayment' for a product, or loss of the benefit of the bargain, require an objective measure against which the plaintiff's allegations may be evaluated." *Shaulis*, 865 F.3d at 10, 12; *see Carrillo v. Wm. Wrigley Jr. Co.*, 2010 WL 11596523, at *3 (C.D. Cal. Apr. 15, 2010) (UCL and FAL require plaintiffs to have "lost money or property as a result of the unfair competition") (citing Cal. Bus. & Prof. Code §§ 17204, 17535)). A plaintiff's "subjective belief" that she received a less valuable product than she paid for is insufficient. *Shaulis*, 865 F.3d at 12; *see Pershouse*, 368 F. Supp. 3d at 191.

Plaintiffs received the nutritional benefits for their pets they were seeking from a diet with added proteins and fats and free of grain ingredients and, therefore, obtained the benefit of their bargain. As the Court found, the presence of a trace amount of gluten is not material—particularly when no Plaintiff even alleges that she was shopping for a gluten-free product—nor does it have any economic impact. *See* 4/14/21 Order, at 11 ("[T]he court cannot discern how this disclosure [of the possibility of gluten cross-contamination] would have had any material impact on plaintiffs' purchasing decisions[.]").

Plaintiffs also have failed to show that the Products were worth less than they paid for them. The amended complaint still contains only conclusory and speculative allegations that

Plaintiffs "paid a substantial price premium due to the false and misleading Grain-Free Claims." (FAC ¶¶ 8-11.) Absent is any "objective measure against which the plaintiff[s'] allegations may be evaluated." *Shaulis*, 865 F.3d at 12. As the Court found, "plaintiffs have not shown that the presence of gluten had any bearing on the promise that products were grain free or otherwise rendered the product less valuable than the price charged." 4/14/21 Order, at 13.

Even if Plaintiffs could plausibly allege that the Products cost more than comparable pet foods that contain grain ingredients, that wouldn't help Plaintiffs, because the Products don't contain any grain ingredients. As a result, a price difference based on the presence or absence of grain ingredients wouldn't establish any injury here.

Lastly, Plaintiffs do not allege that their pets were harmed, that the Products triggered any allergies in their pets, or even that their pets are allergic to gluten (or grain).

## V.    Plaintiffs have failed to state a claim for unjust enrichment.

Plaintiffs' equitable claims for unjust enrichment fare no better. Indeed, these claims also fail for multiple reasons. *First*, as with the initial complaint, Plaintiffs' unjust-enrichment claims are based on the same flawed allegations of misrepresentation as the above claims (*see* FAC ¶ 68). 4/14/21 Order, at 13 (citing *Fitzgerald*, 2020 WL 6586628, at *5 ("As Polar made no actionable misrepresentation to Fitzgerald, the retention of the purchase price cannot be found to be unjust.")); *Elkind v. Revlon Consumer Prods. Corp.*, 2015 WL 2344134, at *14 (E.D.N.Y. May 14, 2015) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim") (citation omitted).

*Second*, unjust enrichment is not available when an adequate legal remedy exists. *Shaulis*, 865 F.3d at 16; *Watkins v. Omni Life Science, Inc.*, 692 F. Supp. 2d 170, 179 (D. Mass. 2010) ("Where a plaintiff has an adequate remedy at law, a claim of unjust enrichment is unavailable."); *Kingston v. FCA US LLC*, 2019 WL 7753446, at *9 (C.D. Cal. Dec. 10, 2019) (Plaintiffs alleging

unjust enrichment must "plead facts showing no adequate legal remedy exists"). "Specifically, it is the availability of a remedy at law, not the viability of that remedy, that prohibits a claim for unjust enrichment." *Tomasella*, 962 F.3d at 82-83; *see Philips v. Ford Motor Co.*, 2015 WL 4111448, at *16 (N.D. Cal. July 7, 2015) ("A plaintiff seeking equitable relief in California must establish that there is no adequate remedy at law available."). Because Plaintiffs have legal remedies available—and in fact have asserted them here—unjust enrichment is not available.

*Third*, unjust enrichment is not available because Plaintiffs' purchases were the subject of express sales contracts. An unjust-enrichment claim "presupposes that no valid contract covers the subject matter of a dispute." *Santos v. Sanyo Mfg. Corp.*, 2013 WL 1868268, at *7 (D. Mass. May 3, 2013) (citation omitted). Plaintiffs' purchases were express sales contracts and Plaintiffs cannot "override an express contract by arguing unjust enrichment." *Id.* (quoting *Platten v. HG Bermuda Exempted Ltd.*, 437 F.3d 118, 130 (1st Cir. 2006)); *see Shaulis*, 865 F.3d at 16 (same); *Gerlinger v. Amazon.Com, Inc.*, 311 F. Supp. 2d 838, 856 (N.D. Cal. 2004) ("Under California law, unjust enrichment is an action in quasi-contract [and] [a]n action based on quasi-contract cannot lie where a valid express contract covering the same subject matter exists[.]"). For retail sales of consumer goods like pet food, "[t]he receipts embody the contract[.]" *Benson v. Fannie Mae Confections Brands, Inc.*, 944 F.3d 639, 649 (7th Cir. 2019). The existence of express sales contracts for Plaintiffs' purchases precludes their unjust-enrichment claims. *See Shaulis*, 865 F.3d at 16 (affirming dismissal of unjust-enrichment claim when there was an express sales contract for purchase of a sweater); *Santos*, 2013 WL 1868268, at *7 ("Because Santos had a valid contract with SANYO [for purchase of a television], he cannot maintain an equitable action for unjust enrichment."); *Gerlinger*, 311 F. Supp. 2d at 856 (finding that direct purchase of books from internet retailers "create[d] an express contract between the buyer and the seller" under California

16

Commercial Code) (dismissing unjust-enrichment claim).

## VI.  Plaintiffs have not alleged a claim for negligent misrepresentation.

Plaintiffs DeHaven and Bush seek to bring a claim for negligent misrepresentation under California law, but that likewise fails. Under California law, a claim for negligent misrepresentation must plead a false representation. *See Brumfield v. Trader Joe's Co.*, 2018 WL 4168956, at \*5 (S.D.N.Y. Aug. 30, 2018) (applying California law); *In re Trader Joe's Tuna Litig.*, 289 F. Supp. 3d 1074, 1091 (C.D. Cal. 2017). As with the initial complaint, the amended complaint doesn't plead a false representation: "Grain free" is truthful because there are no grain ingredients. *See* 4/14/21 Order, at 14 ("[T]he presence of gluten does not render the 'grain free' promise false (which, in turn, means that WellPet did not misrepresent the grain content of its products)[.]").

California law also requires "justifiable reliance" on the alleged misrepresentation. *Trader Joe's*, 289 F. Supp. 3d at 1091. For the reasons discussed in the previous sections, there was no justifiable reliance here because no reasonable consumer would rely on the phrase "grain free" in the name of a pet food as conveying that the food is completely free of any incidental amount of gluten.

Finally, Plaintiffs' negligent-misrepresentation claim is barred by the economic loss doctrine. This rule "bar[s] a plaintiff's tort recovery of economic damages unless such damages are accompanied by some form *of physical harm* (i.e., personal injury or property damage)." *Ladore v. Sony Computer Entm't Am., LLC*, 75 F. Supp. 3d 1065, 1075 (N.D. Cal. 2014) (citation omitted). Plaintiffs have alleged only purely economic losses and, accordingly, their negligent-misrepresentation claim fails as a matter of law. *See, e.g., id.* at 1075-76 (dismissing claim that Sony misrepresented video game features because plaintiff alleged no non-economic losses); *Minkler v. Apple, Inc.*, 65 F. Supp. 3d 810, 820 (N.D. Cal. 2014) (same – economic loss only, no

17

personal injury or property damage); *Strumlauf v. Starbucks Corp.*, 192 F. Supp. 3d 1025, 1035-36 (N.D. Cal. 2016) (failed to allege physical harm).

Although the California Supreme Court has recognized an exception to the economic loss rule, this narrow exception applies only when a plaintiff relies on affirmative misrepresentations and those misrepresentations "expose [the] plaintiff to liability for personal damages independent of the plaintiff's economic loss." *Robinson Helicopter Co. v. Dana Corp.*, 34 Cal. 4th 979, 993 (2004). Plaintiffs aren't claiming any such exposure to liability here. *Id.*

## VII.   Plaintiffs' claims on behalf of proposed class members fail.

Because Plaintiffs have failed to state individual claims, Plaintiffs' claims on behalf of putative consumer classes must also be dismissed. *See O'Shea v. Littleton*, 414 U.S. 488, 494 (1974) ("[I]f none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendants, none may seek relief on behalf of himself or any other member of the class."); *Cruz v. Farquharson*, 252 F.3d 530, 533 (1st Cir. 2001) ("Despite the fact that a case is brought as a putative class action, it ordinarily must be dismissed as moot if no decision on class certification has occurred by the time that the individual claims of all named plaintiffs have been fully resolved."); *Santos*, 2013 WL 1868268, at *7 (citing *O'Shea* and *Cruz*).

## VIII.   Plaintiffs are not entitled to injunctive relief.

Plaintiffs also have not asserted a claim for injunctive relief. The Request for Relief in the amended complaint contains the same conclusory reference to "injunctive relief as pleaded" as the initial complaint. There is no count seeking an injunction, nor does the amended complaint identify any injunctive relief Plaintiffs seek. (Request for Relief, ¶ (f).) *See Kaplan v. Fulton Street Brewery, LLC*, 2018 WL 2187369, at *7 (D. Mass. May 11, 2018) (dismissing injunctive-relief claim when there was no count in the complaint seeking an injunction and the only reference to such relief was a vague request in the prayer for relief).

Even if Plaintiffs were seeking injunctive relief, they lack standing for an injunction. A "plaintiff must demonstrate standing for each claim he seeks to press and for each form of relief that is sought." *Town of Chester v. Laroe Estates, Inc.*, 137 S. Ct. 1645, 1650 (2017). "Although past injuries may provide a basis for standing to seek money damages, they do not confer standing to seek injunctive relief unless the plaintiff can demonstrate that she is likely to be harmed again in the future in a similar way." *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016). When a plaintiff does not allege that she "will purchase the defendant's products in the future, the request is based on past injury and injunctive relief is improper." *Parks*, 377 F. Supp. 3d at 249 (citations and internal quotation marks omitted).

Plaintiffs lack standing to seek injunctive relief because they don't allege "a real and immediate threat of repeated injury" as required under Article III. *O'Shea*, 414 U.S. at 496. *First*, Plaintiffs do not allege that they intend to buy the Products again. Plaintiffs DeHaven and Bush allege that they "remain[] interested in purchasing a grain-free pet food and would consider Wellness in the future if Defendant removed any grain." (FAC ¶¶ 8-9.) Similarly, Plaintiffs Munie and Salerno assert that they "may purchase [the Products] in the future under the reasonable belief that the Grain-Free Claims have been corrected." (FAC ¶¶ 10-11.) The mere possibility that Plaintiffs *might* buy the Products again someday, however, is not enough. The "threatened injury must be *certainly impending* to constitute injury in fact, and … allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (cleaned up); *see Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (the threat of future injury must be "actual and imminent, not conjectural or hypothetical"); *Lanovaz v. Twinings N. Am., Inc.*, 726 F. App'x 590, 591 (9th Cir. 2018) (holding that plaintiff's statement that she would "consider buying" the products in the future did not support a finding of actual or imminent injury).

Plaintiffs also now know that "grain free" simply means there are no grain *ingredients*; it doesn't mean the absence of trace substances. Thus, even if Plaintiffs misunderstood the labeling before, they now know what it means and there is no future risk of injury. *See, e.g.*, *Elkind*, 2015 WL 2344134, at *3 ("Plaintiffs are now aware of the alleged misrepresentations that they challenge, so there is no danger that they will again be deceived by them."); *Rahman v. Mott's LLP*, 2018 WL 4585024, at *3 (N.D. Cal. Sept. 25, 2018) ("[P]laintiff is now aware that 'No Sugar Added' means simply that no sugar was added, and does not indicate that Mott's 100% Apple Juice contains less sugar than or is healthier than other 100 percent apple juices.").

Plaintiffs' injunctive-relief claims fail for the additional reason that private suits for injunctive relief, like those seeking damages, require Plaintiffs to plead an injury in order to establish statutory standing. *See Shaulis*, 865 F.3d at 14 ("[A] private cause of action under Chapter 93A—either for damages or injunctive relief—requires a plaintiff to allege injury[.]"); *Parks*, 377 F. Supp. 3d at 246  ("To successfully assert a claim under either [GBL section 349 or 350], a plaintiff must allege that [she] suffered injury as a result of the allegedly deceptive act or practice.") (cleaned up, citation omitted); *Tabler v. Panera LLC*, 2019 WL 5579529, at *9 (N.D. Cal. Oct. 29, 2019) ("To establish standing under the CLRA, FAL, and UCL, a plaintiff must allege that the plaintiff suffered an 'injury in fact' and 'has lost money or property' as a result of a defendant's alleged conduct."). Plaintiffs have not shown any injury and therefore lack standing to seek any injunctive relief.

## CONCLUSION

For the foregoing reasons, WellPet respectfully requests that the Court grant its motion and dismiss Plaintiffs' First Amended Class Action Complaint in its entirety. Because Plaintiffs have not cured the complaint's defects despite a second opportunity, dismissal should be with prejudice.

Dated:  May 26, 2021

Respectfully submitted,

SHOOK, HARDY & BACON L.L.P.

By:   _/s/ Stephen I. Hansen_____
Richard L. Campbell, BBO 663934
Stephen I. Hansen, BBO 679134
125 Summer Street, Suite 1220
Boston, Massachusetts 02110
Telephone:  (617) 531-1674
rcampbell@shb.com
sihansen@shb.com

James P. Muehlberger
(*pro hac vice*)
Douglas B. Maddock, Jr.
(*pro hac vice*)
Shook, Hardy & Bacon L.L.P.
2555 Grand Blvd.
Kansas City, Missouri 64108
Telephone:  (816) 474-6550
jmuehlberger@shb.com
dmaddock@shb.com

*Attorneys for WellPet LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on May 26, 2021, the foregoing document was served upon all counsel of record via the Court's electronic filing system and/or electronic mail.

*/s/ Stephen I. Hansen*